UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PAUL TULLY and PAULA TULLY                                                    PLAINTIFFS

V.                                             CIVIL ACTION NO.1:06CV1284 LTS-RHW

STATE FARM FIRE AND CASUALTY COMPANY                          DEFENDANT

## MEMORANDUM OPINION

The Court has before it the motion [13] of State Farm Fire and Casualty Company (State Farm) to dismiss the complaint. As grounds for its motion, State Farm asserts that plaintiffs have failed to join the mortgagee of the insured property, CitiMortgage. State Farm also asserts that it is entitled to prevail on the merits of this action as a matter of law.

With respect to the merits of this action, State Farm asserts four theories to support its motion to dismiss. State Farm contends (in the alternative): 1) that the plaintiffs have made an "election of remedies" by accepting benefits paid under their flood coverage, 2) that the plaintiffs' claim for wind damage is for "a prior unrepaired loss," and for that reason, the claim is not payable under State Farm's homeowners policy; 3) that the plaintiffs are "equitably estopped" from asserting a claim under their homeowners policy by their having accepted benefits payable under their flood insurance policy, and 4) that the plaintiffs are no longer a real party in interest because they have assigned the proceeds of their homeowners policy to the United States Small Business Administration (SBA) as security for an emergency loan. For the reasons discussed below, this motion will be denied in its entirety.

This is an action to recover property insurance benefits for damage that occurred during Hurricane Katrina. At the time of the storm, the plaintiffs were the named insureds under a homeowners policy (policy number 24-CW-9901-6) issued by State Farm. The plaintiffs were also insured under a flood policy sold by State Farm under the National Flood Insurance Program. The insured property was located at 105 Edith Street, Bay St. Louis, Mississippi.

The insured property was extensively damaged in the storm. The policy limits of the plaintiffs' flood coverage ($75,000 for structure and $40,000 for contents) was apparently offered by State Farm and accepted by the plaintiffs, and there is no current controversy concerning the flood policy. There is a dispute between the plaintiffs and State Farm concerning the homeowners policy over whether there was damage to the insured property caused by a covered peril, i.e. windstorm, and, if so, the extent of this covered loss.

The homeowners policy has coverage limits of $75,000 (dwelling), $7,500 (dwelling extension), $65,250 (personal property), and "actual loss sustained" for loss of use of the insured property. Plaintiffs allege that there has been a breach of the homeowners insurance policy and that they are entitled to collect policy limits under the homeowners policy. Plaintiffs also allege that State Farm's claims handling practices were tortious under applicable Mississippi law. (Complaint Paragraphs 45 through 55)

## State Farm's Theory of Election of Remedies

I find no merit in State Farm's contention that by accepting benefits under their flood policy the plaintiffs have made an election of remedies that precludes collection of benefits under their State Farm homeowners policy. State Farm acknowledges that these policies cover different perils. The flood policy covers water damage that is excluded from coverage under the homeowners policy, and the homeowners policy covers wind damage that is not a covered peril under the flood policy. State Farm is apparently arguing that the plaintiffs can lawfully collect insurance benefits under only one of these two policies, even if the insured property was damaged by both wind and water. This is a novel argument, to say the least.

State Farm has offered no evidence to support its underlying contention that the plaintiffs were over-insured. In order to establish this, State Farm would be obliged to show that the plaintiffs' actual losses were less than the combined limits of all applicable insurance coverages. Without conclusive evidence of the amount of the loss, it is impossible to establish whether the insured value of the property (the only known figures in the equation) is more than, equal to, or less that the total value of the property or the total damage to the property (and damages for loss of use) from all causes during the storm. State Farm repeatedly asserts that the plaintiffs' collection of benefits under the State Farm homeowners policy would amount to a "windfall" and a "double recovery," but State Farm has offered no evidence to support these contentions.

The total value of the insured property sets the upper limit on the amount of insurance a policyholder may collect for physical damage to the insured property. The limits of coverage also set an upper limit on the amount a policyholder may collect. Assuming a total loss from a covered cause is established, the policyholder could recover the lower of these two upper limits under the policy in question. Within these limits, the insured may seek recovery under all the policies covering the perils that contributed to the loss.

If, as it appears, there was no question that the damage caused by flooding during the storm was equal to or greater than the flood policy limits, the payment of those limits would reduce the plaintiffs' total losses. But collection of those limits would not amount to a waiver of benefits for wind damage under the plaintiffs' State Farm homeowners policy. So long as there are damages that may be established from a peril covered under the homeowners policy, and so long as the insureds have not been fully compensated for their total loss, there has been no "election of remedies." Indeed,

the entire concept of election of remedies has nothing to do with the collection of insurance benefits under policies that cover different perils.

Requiring an insured to elect whether to seek policy benefits under only one of two policies--both of which the insured contends to cover perils that contributed to the loss--would be a Hobson's choice of the highest order. The insured has paid separate premiums for coverage from different perils, and where the evidence establishes that both of these different perils have caused damage to the insured property, the insured is entitled to look for compensation to all of the coverages for which he has paid.

### State Farm's Theory of "Unrepaired Loss"

State Farm contends that the "anti-concurrent cause" provision in its homeowners policy prohibits the imposition of liability for wind damage sustained during Hurricane Katrina. That provision states:

> *Section One - Losses Not Insured*
> \* \* \*
> *2.    We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; of (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:*
> \* \* \*
> *c.    Water Damage, meaning:*
> *(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;*

State Farm acknowledges that I have previously held that this contract provision is ambiguous in the context of damages caused by Hurricane Katrina. *Tuepker v. State Farm*, 2006 WL 1442489 (S.D.Miss.2006) (*Tuepker*). State Farm points out that it has appealed this decision, and State Farm contends that the "anti-concurrent cause" provision "was in effect at the time Plaintiffs [sic] loss was adjusted and remains part of the policy at issue and according to Mississippi case law, is applicable and unambiguous until such time as all appeals related to this Court's decision in *Tuepker* are exhausted." (State Farm Motion To Dismiss at page 10)

State Farm reasons that because there was water damage to the plaintiffs' property, it is entirely relieved of any liability under its homeowners policy, even if there was wind damage that occurred before the arrival of the water. Following the logic of this argument, State Farm would have no liability under its homeowners policy if there were any water damage, no matter how minimal, that affected the insured property. In

the context of wind coverage during a hurricane, this would mean that the wind coverage under the homeowners policy would be completely negated in many instances.  If this argument were accepted, it would follow that in the case of an insured property that took an inch of water and lost its roof to the winds, State Farm would owe the policy holder nothing under its homeowners coverage.  I find this logic unpersuasive, and I find the exclusion so poorly drafted and ambiguous that I am uncertain whether it could ever support the interpretation State Farm urges the Court to adopt.

As I ruled in *Tuepker*, the water damage exclusion in the State Farm homeowners policy is valid.  State Farm is not liable under its homeowners coverage for any damage it can prove to have been caused by water, as that exclusion is defined in the policy.  State Farm is liable, however, under its homeowners policy for wind damage because there is no exclusion for this type of loss.  The "anti-concurrent cause" provision does not clearly and unambiguously negate the broad coverages provided under the other terms of the State Farm homeowners policy.

Every expert who has rendered an opinion in the Hurricane Katrina cases I have heard has acknowledged that the storm's maximum winds preceded the storm surge flooding.  These experts differ on the length of time that the strongest winds preceded the highest water, but they uniformly agree that the highest winds came ahead of the highest storm surge flooding.  State Farm's argument that the wind damage is not recoverable because it is a "prior unrepaired loss" is apparently premised on the idea that even if the hurricane winds did severe damages to the insured property before the arrival of the storm surge flooding they would owe the policyholder nothing under their homeowners coverage if the insured property then sustained extensive flood damage.  The reasoning seems to be that if the insured property was damaged by wind, a covered peril under the homeowners policy, no benefits could be collected because the wind damage was exacerbated by flood damage, an excluded peril.  This logic is not supported by the citation of any Mississippi authority, and it seems to me to fly in the face of the many cases decided in Mississippi after Hurricane Camille.

In my view, if there is wind damage covered under a homeowners policy, the right to collect the insurance applicable to that damage would come into existence at the time the damage occurred.  If the insured property were later more severely damaged by flooding, the wind damage would not become payable under the flood policy; the insurer under the homeowners policy would still be responsible for this wind damage.  Accepting State Farm's argument would unfairly shift the responsibility for this wind damage onto the flood insurance underwriter or onto the policyholder who had no flood insurance.

The bottom line in Mississippi jurisprudence, in the context of claims under an "all risks" policy such as State Farm's homeowners policy, for damage that occurs during a hurricane is that wind damage is covered and water damage is validly excluded.  The burden of proof to establish the exclusion is on the insurer. *Tuepker*, supra.

## State Farm's Theory of Equitable Estoppel

State Farm's theory of equitable estoppel appears to me to be a re-hash of the "election of remedies" argument. It is apparently uncontested that the insured property was a total loss and that the destruction of this property was caused, in substantial part, by flooding during the storm. The plaintiffs accepted and State Farm paid the limits of coverage under the plaintiffs' flood policy. State Farm contends that by accepting their flood insurance benefits, the plaintiffs have forfeited their right to collect any benefits under their State Farm homeowners policy. This contention is supported by reasoning that appears to me to be contorted at best. Both the theories of "election of remedies" and equitable estoppel rely upon a core factual issue, i.e. whether the flood insurance benefits have fully compensated the plaintiffs for their losses. State Farm has offered no evidence that would support this lynchpin of these two theories.

State Farm contends that if the plaintiffs are permitted to seek benefits under their homeowners policy the United State of America will be "compelled to seek recoupment of the erroneous payments under the flood policy." I find no support for this contention. In the first place, it is State Farm who evaluated the plaintiffs' flood insurance claim and decided to pay the flood insurance policy limits. In the second place there is no indication in the record before me that this payment was not properly made, based on the losses State Farm assessed during the adjustment process.

State Farm also contends that the plaintiffs are now denying that there was any flood damage to the insured property. This is an assertion that has no factual support that I can discern in the record. To say that this logic strains credulity would be a great understatement. To say that by making a claim under their homeowners policy the plaintiffs have committed "Concealment of Fraud" that voids their flood insurance coverage, without evidentiary support for that conclusion, is utter nonsense. The flood insurance coverage is a settled issue, and the question now is whether, in addition to these flood damages, the plaintiffs can prove a loss that is covered under the homeowners policy that exceeds these flood insurance benefits.

The plaintiffs have two mutually exclusive coverages that the storm potentially brought into play: 1) flood coverage under the National Flood Insurance Program and 2) wind coverage under their State Farm homeowners policy. There was flood damage to the insured property, and State Farm paid the flood insurance coverage limits. By contending that the insured property also sustained damage from hurricane winds, plaintiffs have stated a cause of action under their homeowners policy. Since the State Farm homeowners policy is an "all risks" policy as far as the insured dwelling is concerned, and since windstorm damage is a covered peril as far as the insured personal property is concerned, State Farm will owe policy benefits (up to the lower of the total loss less the flood insurance collection or homeowner policy limits) unless it can meet its burden of proof that the water exclusion in its homeowners policy applies to the thus far uncompensated portion of the plaintiffs' loss. By offering and accepting the flood insurance policy limits, the parties have indicated their agreement that at least,

to the extent of these benefits, the damage to the insured property was caused by flooding, and the parties are now judicially estopped from denying this.

Whether and to what extent the hurricane winds caused or contributed to the overall damage is the central question in this lawsuit. Equally critical will be the fact questions of total damages sustained and the total value of the insured property. I find that the complaint states a cause of action sufficient to allow this action to go forward. State Farm's motion to dismiss will therefore be denied.

### State Farm's Request That CitiMortgage Be Joined as a Party

Plaintiffs' counsel has represented to the Court, and State Farm has not denied, that the mortgage held by CitiMortgage on the insured property has been fully satisfied from the proceeds of the flood insurance policy. In these circumstances, there is no reason to require Citimortgage to participate in this lawsuit. State Farm offers a number of possible events which might justify Citimortgage's participation in subsequent litigation, but at this point these events are very speculative and the forced joinder of CitiMortgage is not justified.

### State Farm's Assertion that the Plaintiffs Are Not Real Parties in Interest

Approximately ten months after the storm, in April 2006, the plaintiffs obtained a disaster loan from the United States Small Business Administration (SBA). This loan is secured by a deed of trust on the plaintiffs' property. As part of this loan transaction, the plaintiffs assigned the proceeds of their State Farm homeowners policy and their flood policy to the SBA. This assignment is required under applicable federal statutes and regulations to avoid use of SBA emergency loan funds to duplicate compensation borrowers might receive from other sources, including property insurance. Plaintiffs signed two assignments. The first assignment provides:

### ASSIGNMENT OF INSURANCE PROCEEDS

*For value received, [Plaintiffs] (insured) hereby assign to the U.S. Small Business Administration, an Agency of the United States Government (SBA), any and all moneys now due or to become due to [Plaintiffs] from State Farm (Flood) under policy no 24-CW-9903-6 for damages occurring on or about August, 2005, as a result of a (an) Hurricane Katrina.*

The second assignment provides:

### ASSIGNMENT OF INSURANCE PROCEEDS

*For value received, [Plaintiffs] (insured) hereby assign to the U.S. Small Business Administration, an Agency of the United States Government (SBA), any and all moneys now due or to become due to me from State Farm (Home) under policy no 24-RB-6350-0 for damages occurring on or about August, 2005, as a result of a (an) Hurricane Katrina.*

*The insured and SBA agree that this Assignment shall only apply to recoveries for real property.*

While this assignment is not an assignment of the insureds' *rights* under the policy or of the plaintiffs' *claims* against State Farm under the policy, State Farm contends that this assignment has the legal effect of making the SBA, and not the plaintiffs, the only real party in interest in this case.  Since the SBA is not presently a party, State Farm contends that this action should be dismissed on the grounds that the plaintiffs lack standing to pursue a claim under the State Farm homeowners policy.  Alternatively, State Farm asserts that the SBA should be joined as a party.

Granting State Farm's motion would create something of a Catch-22 for the plaintiffs.  State Farm's contention is that having obtained a loan secured in part by the *proceeds* of their property insurance, the plaintiffs are no longer entitled to press their claim to collect those policy proceeds.  Since a recovery of policy benefits and payment of the sums recovered to the SBA would necessarily operate to reduce, i.e. to offset, dollar for dollar, the amount the plaintiffs are obliged to repay the SBA on their loan, the plaintiffs have a direct and obvious interest in the recovery of these insurance benefits.  I see nothing in the assignment or the related documents that evidences any intention on the part of the plaintiffs or on the part of the SBA that the SBA take over the litigation of the insurance claim under the plaintiffs' State Farm policy, and I see no indication that the plaintiffs intended to transfer or the SBA to acquire the plaintiffs' rights under the policy.

Plaintiffs have assumed a valid legal obligation to pay any policy proceeds they may recover to the SBA, but I am at a loss to understand how State Farm can contend, in good faith, that plaintiffs no longer have a sufficient interest in this litigation to recover those policy proceeds to qualify as real parties in interest under F.R.Civ.P.17.  I find no merit in State Farm's contention that the assignment of these insurance proceeds deprives the plaintiffs, the named insureds, of standing to pursue a claim under their homeowners insurance policy.  In my view, the plaintiffs have a right to seek enforcement of their insurance contract as well as a duty to honor the assignment of any insurance proceeds they may recover in accordance with the plaintiffs' contractual obligations to the SBA.

State Farm also contends that the plaintiffs lack standing to pursue a claim under their homeowners policy for additional living expenses (ALE benefits), in spite of the fact that the assignment applicable to the homeowners policy (the second assignment quoted above) is expressly limited to recovery for damages to real property.  State Farm is arguing that the plaintiffs are unable to pursue a claim that is not covered by the assignment because other specific policy proceeds have been assigned to the SBA.  In my opinion, the arrangement between the plaintiffs and the SBA is a partial rather than a complete assignment of the policy proceeds.  This fact alone distinguishes those cases cited by State Farm in support of its contention that the plaintiffs have no continuing interest in recovering benefits under the State Farm policy.  These cases

include *EB, Inc. v. Allen*, 722 So.2d 555 (Miss.1998) and *Great Southern National Bank v. McCullough Environmental Services, Inc.*, 595 So.2d 1282 (Miss.1992).

Mississippi jurisprudence looks to the terms of an assignment as well as the circumstances in which the assignment is made to determine the parties' intentions. *EB, Inc. v. Allen*, 722 So.2d 555 (Miss.1998) citing *International Harvester Co. v. Peoples Bank & Trust Co.*, 402 So.2d 856, 861 (Miss.1981). Mississippi cases also draw a distinction between the assignment of a contract and the assignment of money that may be due or may become due under a contract. The latter may be validly assigned even where the underlying contract expressly prohibits assigning the contract itself. *Merchants and Farmers Bank of Meridian v. McClendon*, 220 So.2d 815 (Miss.1969). The State Farm policy at issue in this case cannot be validly assigned by the plaintiffs without State Farm's written consent. (State Farm Policy at page 20, Condition 7)

When the terms of the assignment and the surrounding circumstances indicate the parties' intention to convey all of an assignor's rights in the thing assigned, the assignee thereafter has no further interest therein. This was the type of transaction that was before the Court in *International Harvester Co. v. Peoples Bank and Trust Co.*, supra. The debtor in that case assigned to the bank his "contract rights" in an agreement between the debtor and International Harvester Company (International Harvester). The contract in question was delivered to the bank as part of this arrangement. The Court found that this was an unequivocal assignment of all the debtor's rights under his contract with International Harvester. This transaction involved a fixed legal obligation to pay a sum certain. The assignment was approved by International Harvester, and the contract itself was expressly assigned and delivered to the assignee. This transaction stands in sharp contrast to the SBA assignment now before the Court. The legal obligation of State Farm under its homeowners policy has not yet been liquidated; the assignment is contingent on the plaintiffs' recovery under their insurance policy; and the assignment reserves some rights under the insurance contract to the plaintiffs. If the plaintiffs cannot prove their case on its merits, there are and will be no "moneys due to [Plaintiffs] under the [State Farm homeowners] policy."

The assignment now before the Court does not appear to me to cover the plaintiffs' claims for extra-contractual damages based on State Farm's alleged bad faith or tortious misconduct. This is a tort claim that is based on duties incident to the insurance contract, not a contract claim payable under the terms of the policy. The assignment does not purport to assign these claims to the SBA, and I see nothing in these loan documents that indicates an intention by either the plaintiffs or the SBA to assign these rights.

The plaintiffs are the named insureds under the State Farm policy, and the SBA is neither an additional insured nor a third party beneficiary of the insurance contract. The plaintiffs' obligation to the SBA arose through a loan transaction that occurred

several months after the loss allegedly covered by the State Farm homeowners policy. As I read the terms of the agreement between the SBA and the plaintiffs, the plaintiffs' obligation is to pay to the SBA, for credit against the outstanding balance of the SBA loan, the policy benefits, if any, the plaintiffs actually collect in this lawsuit, i.e. "any and all moneys now due or to become due under [the State Farm homeowners] policy."

Accepting State Farm's argument would lead to the conclusion that the SBA and the plaintiffs intended to agree that the SBA would assume the right and the responsibility for pursuing claims under the policy. I do not believe that to be the case. It is clear to me that the SBA has never contemplated undertaking to litigate the insurance claims of those to whom it has given emergency loans involving the assignment of insurance proceeds. I see nothing in the loan documents or the assignment that indicates any intention that this should occur. The plaintiffs' obligation to repay their SBA loan exists independently of their right, if any, to collect insurance benefits under their homeowners policy. The agreement between the plaintiffs and the SBA only affects the disposition of that recovery in the event such a recovery occurs.

While I would certainly permit the SBA to intervene in this action to protect its interest if it should apply for that relief, I do not believe this situation warrants my requiring the SBA to participate in this action involuntarily. Since the assignment at issue does not make a full assignment of the plaintiffs' rights under the contract or of the plaintiffs claims under the contract, I find that the SBA has acquired no interest in this insurance contract other than its unchallenged right to be paid the sums plaintiffs may recover as policy benefits, up to the outstanding balance owed on the plaintiffs' emergency loan.

Accordingly, I will deny State Farm's motion to dismiss [13]. An appropriate order will be entered.

**DECIDED** this 16th day of May, 2007.

                                                          s/ L. T. Senter, Jr.
                                                          L. T. SENTER, JR.
                                                          SENIOR JUDGE